FILED
OCT 3 0 2013
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
      v.                        )
                                )
JASON W. KIRLIN a/k/a "Jay,"    )
      a/k/a "Rock,"             )       **4:13CR457 CEJ/TIA**
JOSEPH G. CAPARRO a/k/a "Joe,"  )
AMBER ROSE DAVIDSON,            )
ELIZABETH A. ALFONSO a/k/a "Liz,")
GREGORY C. LEWIS a/k/a "Greg,"  )       No.
STEVEN N. EMERSON,              )
SUSAN KAY SMITH a/k/a "Suzie,"  )
      a/k/a SUSAN CURTIS,       )
LYRA MARIA BEKE, a/k/a          )
      LYRA ERIKA BEKE,          )
PAMELA K. FOX a/k/a "Pam" and   )
JOHN RANDALL OSSOWSKI           )
      a/k/a "Randy,"            )
                                )
            Defendants.         )

### INDICTMENT

**COUNT I:**   **CONSPIRACY TO POSSESS WITH THE INTENT TO DISTRIBUTE MARIJUANA**

The Grand Jury charges that:

Beginning at a time unknown to the Grand Jury, but including October 2008, through the date of this indictment, with the exact dates unknown to this Grand Jury, in St. Louis County and elsewhere within the Eastern District of Missouri, and elsewhere, the defendants,

**JASON W. KIRLIN a/k/a "Jay", a/k/a "Rock,"
JOSEPH G. CAPARRO a/k/a "Joe,"
AMBER ROSE DAVIDSON,
ELIZABETH A. ALFONSO a/k/a "Liz,"
GREGORY C. LEWIS a/k/a "Greg,"
STEVEN N. EMERSON,
SUSAN KAY SMITH, a/k/a "Suzie" a/k/a/ SUSAN CURTIS,
LYRA MARIA BEKE a/k/a LYRA ERIKA BEKE, and
PAMELA K. FOX a/k/a "Pam,"**

did knowingly and intentionally combine, conspire, confederate and agree together, with other persons, both known and unknown to the Grand Jury, to commit the following offenses against the United States, that is, to knowingly and intentionally possess with intent to distribute and to distribute marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1).

All in violation of Title 21, United States Code, Section 846; and

The quantity of the mixture or substance containing marijuana involved in the offense was in excess of one hundred (100) kilograms, making the offense punishable under Title 21, United States Code, Section 841(b)(1)(B)(vii).

### COUNT II:   CONSPIRACY TO COMMIT MONEY LAUNDERING

The Grand Jury further charges that:

Beginning at a time unknown to the Grand Jury, but including October 2008, through the date of this indictment, with the exact dates unknown to this Grand Jury, in St. Louis County and elsewhere within the Eastern District of Missouri, and elsewhere, the defendants,

**JASON W. KIRLIN a/k/a "Jay", a/k/a "Rock,"
JOSEPH G. CAPARRO a/k/a "Joe",
AMBER ROSE DAVIDSON,
ELIZABETH A. ALFONSO a/k/a "Liz,"
GREGORY C. LEWIS a/k/a "Greg,"
SUSAN KAY SMITH, a/k/a "Suzie" a/k/a/ SUSAN CURTIS,
LYRA MARIA BEKE a/k/a LYRA ERIKA BEKE, and
PAMELA K. FOX a/k/a "Pam,"**

did knowingly and willfully conspire, combine, confederate and agree with each other and other persons both known and unknown to this Grand Jury, to: (a) to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce with financial institutions, to wit: counter deposits of cash at banks, which included but is not limited to U.S. Bank, Bank of

America and Bank of Mendocino; the purchase of money orders and issuance of electronic transfers of funds and transferring money interstate; (b) which in fact involved the proceeds of a specified unlawful activity, to wit: the conspiracy to distribute marijuana in violation of Title 21, United States Code, Sections 841 (a)(1) and 846; (c) with the intent to promote the carrying on of specified unlawful activity and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity; and (d) while conducting and attempting to conduct the financial transactions, the defendants knew that the funds involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## MANNER AND MEANS OF ACCOMPLISHING THE CONSPIRACY

It was a necessary part of the conspiracy that the defendants and certain unindicted coconspirators would make bulk cash deposits at various financial institutions and utilize numerous United States Postal Service money orders and various other money orders to promote the distribution of marijuana and to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the distribution of marijuana throughout the Eastern District of Missouri and elsewhere. Members of this conspiracy cultivated marijuana and distributed it throughout the Eastern District of Missouri and elsewhere in the United States. Once the marijuana was cultivated in California, members of the conspiracy would then distribute the marijuana and transport bulk cash to various customers throughout the Eastern District of Missouri and elsewhere.

The defendants accomplished and attempted to accomplish the objects of the conspiracy in the following manner and through the following means:

1. It was part of said conspiracy that from October 2008 through December 2012, Jason Kirlin, Amber Davidson and others, structured the purchase of more than $360,000 in Money Orders (MOs) in order to circumvent the mandatory reporting requirements and to conceal the source of his funds. In addition to the St. Louis, Missouri area, the money orders were purchased in California, Tennessee, Georgia, Colorado, Illinois, and Pennsylvania.

2. It was further part of said conspiracy that Jason Kirlin purchased a property located at 3465 Kings Hill Road, Santa Rosa, CA 95404 in March 2010. In the weeks leading up to that property purchase, Kirlin made seven cash deposits into his US Bank account totaling $85,950 from February 5, 2010 to March 5, 2010. Four of those deposits were made in the Eastern District of Missouri, and three were made in California. That included one bulk deposit of $34,000, and another of $21,000, with the remaining five deposits ranging from $2,350 to $8,500 each. On March 5th 2010, Kirlin used the same U.S. Bank account to pay $164,798.95 during closing on the Kings Hill Road property ($19,000 to First American Title and $145,798.95 to First American Trust).

3. It was further part of said conspiracy that from October 2008 through December 2012, over $444,000.00 in bulk cash bank deposits were made by and on behalf of members of the instant conspiracy: over $200,000.00 in structured money order purchases (including money order purchases from the U.S. Postal Service) from October 2008 through December 2012; and the purchase of the 3465 Kings Hill Road property was made with payments totaling more than $426,000.00 from February 2010 through January 2013.

4

4.      It was further part of said conspiracy that in the fall of 2010, an unindicted individual contacted Susan Smith regarding a "job" involving driving a vehicle across the country as a courier of bulk U.S. currency derived from a marijuana trafficking organization that was later determined to involve the co-conspirators listed in the instant indictment. Following, Susan Smith was provided $11,000 by members of the conspiracy to take a trip from California to St. Louis, Missouri in order to purchase a 2005 Ford Five Hundred that was subsequently used to transport marijuana and bulk cash to the Eastern District of Missouri and elsewhere.  Smith was involved in several trips that took her to various cities from California to transport bulk currency and marijuana.

5.      It was further part of said conspiracy that in November 2010, Elizabeth Alfonso and Joseph Caparro provided Pamela Fox with a vehicle that had a hidden compartment inside which was used to transport bulk currency and marijuana on numerous occasions.  At the direction of Alfonso and Caparro, Fox picked up the aforementioned vehicle in St. Louis, Missouri from Jason Kirlin's residence, and subsequently drove it to various east coast cities to retrieve bulk U.S. currency on behalf of the drug trafficking organization.  While Fox was driving through Tennessee on her way back to California, she was subsequently detained in Tennessee with approximately $356,090 U.S. currency which was seized from the hidden compartment inside the vehicle she was driving.

6.      It was further part of said conspiracy that in the fall of 2011, Joseph Caparro provided Steve Emerson with $70,000 U.S. Currency to purchase a 1976 Cessna airplane that was intended to transport marijuana.  Also, the airplane was used to transport proceeds from the sale of marijuana on behalf of the drug trafficking organization.  More specifically, in August and September of 2011, there were approximately five (5) wire transfers of U.S. Currency made by

Steve Emerson to the original owner of the Cessna to be applied towards the purchase of the Cessna on behalf of Joseph Caparro.

In violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i) and 1957; and all in violation of Title 18, United States Code, Section 1956(h).

### COUNT III:  CONSPIRACY TO STRUCTURE FINANCIAL TRANSACTIONS

The Grand Jury further charges that:

Beginning at a time unknown to the Grand Jury, but including October 2008, through the date of this indictment, with the exact dates unknown to this Grand Jury, in St. Louis County and elsewhere within the Eastern District of Missouri, and elsewhere, the defendants,

**JASON W. KIRLIN a/k/a "Jay", a/k/a "Rock,"**
**AMBER ROSE DAVIDSON,**

the defendants herein, did knowingly and willfully conspire, combine, confederate and agree with each other and other persons known and unknown to this Grand Jury, to commit offenses against the United States, to wit: did knowingly and willfully and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structure and assist in structuring, money order purchases from a domestic financial institution, the United States Post Office.

### OVERT ACTS

The defendants Jason Kirlin, Amber Davidson and others, in furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Eastern District of Missouri and elsewhere:

1. On or about the following date, the postal money orders were purchased in amounts structured to avoid the transaction reporting requirements of federal law and as such these postal

money orders constituted proceeds of a violation of the reporting requirement of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder.

| Date | Type | Amount | Payor/Sender |
|---|---|---|---|
| 11/30/09 | Money Order | $1,000.00 | Jason Kirlin |
| 11/30/09 | Money Order | $10.28 | Jason Kirlin |
| 11/30/09 | Money Order | $750.00 | Jason Kirlin |
| 11/30/09 | Money Order | $1,000.00 | Jason Kirlin |
| 11/30/09 | Money Order | $75.16 | Amber Davidson |
| 11/30/09 | Money Order | $153.55 | Jason Kirlin |
| 11/30/09 | Money Order | $1,000.00 | Amber Davidson |
| 11/30/09 | Money Order | $1,000.00 | Amber Davidson |
| 11/30/09 | Money Order | $180.00 | Jason Kirlin |
| 11/30/09 | Money Order | $200.00 | Amber Davidson |
| 11/30/09 | Money Order | $1,000.00 | Jason Kirlin |
| 11/30/09 | Money Order | $1,000.00 | Amber Davidson |

All in violation of Title 31, United States Code, Section 5324(a)(3) and Title 18, United States Code, Section 371, and punishable under Title 18, United States Code, Section 371.

## COUNT IV: STRUCTURING FINANCIAL TRANSACTIONS

The Grand Jury further charges that:

Between March 30, 2009 and April 14, 2009, in St. Louis County, and elsewhere in the Eastern District of Missouri, the defendant,

**JOHN RANDALL OSSOWSKI a/k/a "Randy,"**

did knowingly and willfully and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structure and assist in structuring, the following transactions with a domestic financial institution, to wit:

| Date | Type | Amount | Financial Institution |
| --- | --- | --- | --- |
| 03/30/09 | Cash Deposit | $7,500.00 | Commerce Bank |
| 03/31/09 | Cash Deposit | $7,150.00 | Commerce Bank |
| 04/03/09 | Cash Deposit | $7,330.00 | Commerce Bank |
| 04/06/09 | Cash Deposit | $3,000.00 | Commerce Bank |
| 04/07/09 | Cash Deposit | $7,000.00 | Commerce Bank |
| 04/08/09 | Cash Deposit | $7,500.00 | Commerce Bank |
| 04/08/09 | Cash Deposit | $6,350.00 | Commerce Bank |
| 04/08/09 | Cash Deposit | $6,000.00 | Commerce Bank |
| 04/13/09 | Cash Deposit | $7,000.00 | Commerce Bank |
| 04/13/09 | Cash Deposit | $6,200.00 | Commerce Bank |
| 04/14/09 | Cash Deposit | $8,520.00 | Commerce Bank |

In violation of Title 31, United States Code, Section 5324(a)(3) and Title 31, Code of Federal Regulations, Section 103.11, and punishable under Title 31, United States Code Section 5324(d).

8

**FORFEITURE ALLEGATION**

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 21, United States Code, Section 853(a), upon conviction of an offense in violation of Title 21, United States Code, Sections 841 and 846 as set forth in Count I of the Indictment, the defendants shall forfeit to the United States of America:

    a. any property, constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of such violations;

    b. any property used, or intended to be used, in any manner or part to commit or to facilitate the commission of such violations; and

2. Subject to forfeiture is no less than $1,000,000.00 in United States currency, which is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to the offense charged in Count I.

3. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1956(h) as set forth in Count II of the Indictment, the defendants shall forfeit to the United States of America:

    a. any property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1956; and

    b. any property traceable to such property.

4. Subject to forfeiture is no less than $1,000,000.00 in United States currency, which is a sum of money equal to the total value of any property, real or personal, involved in transactions or attempted transactions in furtherance of the offense charged in Count II.

5. Pursuant to Title 31, United States Code, Section 5317(c), upon conviction of an offense in violation of Title 31, United States Code, Sections 5324(a)(3) and Title 18, United

States Code, Section 371, as set forth in Count III of the Indictment, the defendants shall forfeit to the United States of America:

    a.    any property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1956; and

    b.    any property traceable to such property.

any proceeds obtained directly or indirectly as a result of such violation of Title 31, United States Code, Sections 5324(a)(3) and Title 18, United States Code, Section 371.

6. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, involved in transactions or attempted transactions in furtherance of the offense charged in Count III.

7. Specific property subject to forfeiture as to Counts I through III as set out above includes, but is not limited to, the following:

    a.    approximately $356,090.00 United States currency seized on 11/10/11;
    b.    Real Property located at 3465 Kings Hill Road, Santa Rosa, CA, 95404, and further described as:

<u>Parcel One</u>: Lot 2, as shown on Parcel Map No. 92-320, filed for record May 20, 1993 in Book 507 of Maps, Page 46 through 48, inclusive, Sonoma County Records;

<u>Parcel Two</u>: An easement for road and public utilities purposes over that portion of Section 16, Township 8 North, Range 7 West, M.D.M., that is included within a strip of land, 50.00 feet wide, the centerline of which is described as follows: Commencing at the Northeasterly corner of Lot 6, as shown on the Record of Survey filed in Book 165 of Maps, Page 7; thence South 0 degrees 27' 02" East along the Easterly line of said Lot 6, a distance of 9.44 feet to the point of beginning; thence South 23 degrees 18' 26" West, 146.96 feet; thence South 78 degrees 17' 30" West, 440.14 feet; thence South 80 degrees 45' 19" West, 303.79 feet; thence South 58 degrees 00' 22" West, 257.25 feet; thence South 86 degrees 40' 40" West, 184.76 feet to the Northwesterly corner of said Lot 6;

<u>Parcel Three</u>: An easement for general road and utility purposes over and long the East 50 feet of the South 540 feet of Lot 4, in Section 16,

Township 8 North, Range 7 West, M.D.B. & M., as conveyed to Donald T. Desborough by Deed dated March 14, 1972 and recorded April 28, 1972, in Book 2623 of Official Records, Page 284;

Parcel Four: An easement for road, access, utility and drainage purposes, lying within Lot 5, Section 16, Township 8 North, Range 7 West, M.D.B. & M., over a strip of land lying 25 feet on each side of the following described centerline: Commencing at a ½ inch iron pipe, tagged L.S. 3489, in the center of Calistoga Road, said iron pipe marking the Northwest corner of Lot 5, Section 16, Township 8 North, Range 7 West, M.D.B. & M.; thence along the centerline of Calistoga Road, South 71 degrees 41' 41" East, 90.14 feet to a point of curve; thence on a tangent curve to the right, with a radius of 390.00 feet, through an angle of 23 degrees 05' 08", for a distance of 157.14 feet to the true point of beginning of the easement centerline herein described; thence from said true point of beginning, North 80 degrees 42' 07" East, 110.52 feet to a point of curve; thence on a tangent curve to the right, with a radius of 200.00 feet, through an angle of 14 degrees 15' 11", for a length of 49.75 feet; thence South 85 degrees 02' 42" East, 64.74 feet to a point of curve; thence on a tangent curve to the left, with a radius of175.00 feet, through an angle of 17 degrees 11' 46", for a length of 52.52 feet; thence North 77 degrees 45' 32" East, 37.47 feet to a point of curve; thence on a tangent curve to the right, with a radius of 200.00 feet, through an angle of 28 degrees 40' 53", for a length of 100.12 feet; thence South 73 degrees 33' 35" East, 368.46 feet to a point of curve; thence on a tangent curve to the left, with a radius of 200.00 feet, through an angle of 32 degrees 17' 02" for a length of 112.69 feet; thence North 74 degrees 09' 23" East, 14.76 feet to a point of curve; thence on a tangent curve to the left, with a radius of 150.00 feet, through an angle of 46 degrees 51' 35" for a length of 122.68 feet; thence North 27 degrees 17' 48" East, 13.62 feet to a point of curve; thence on a tangent curve to the left, with a radius of 150.00 feet, through an angle of 26 degrees 29' 58" for a length of 69.38 feet; thence North 0 degrees 47' 50" East, 63.24 feet to a point of curve; thence on a tangent curve to the left, with a radius of 150.00 feet, through an angle of 22 degrees 03' 17", for a length of 57.74 feet; thence North 21 degrees 15' 27" West, 195.08 feet to a point of curve; thence on a tangent curve to the right, with a radius of 100.00 feet, through an angle of 36 degrees 33' 46", for a length of 63.84 feet; thence Northerly 15 degrees 18' 19" East, 90.29 feet to a point on the Northerly line of said Lot 5, the point of termination of the centerline herein described, from which point the Northeast corner of said Lot 5, marked by a 1/2inch iron pipe tagged L.S. 3489, bears North 70 degrees 10' 34" East, 26.54 feet. Basis of bearings: Record of Survey filed in Book 165 of Maps, Page 1, Sonoma County Records.

    <u>Parcel Five</u>: An easement for septic system leachfield purposes as set forth in a document recorded November 09, 2009 as Instrument No.2009-109423, Sonoma County Records, and more particularly described as being an easement for access and the installation, maintenance, monitoring and repair of a private sewage disposal system with the right to remove vegetation as necessary to access, install, maintain and repair said system over a portion of the lands of Lindsay Austin and Kirsten Austin, Co-Trustees of the 1997 Austin Trust dated 6/11/97, as described in a Document recorded as Instrument No. 2001-036396, Sonoma County Records, and lying within the Section 16, Township 8 North, Range 7 West, Mount Diablo Meridian, and being a portion of Lot 1, as shown on Parcel Map No. 92-3 20 filed for record in Book 507 of Maps, at Pages 46 through 48, inclusive, Sonoma County Records, said portion is more particularly described as follows: Commencing at a found ½ inch iron pipe tagged LS 3489 marking the Southwest corner of said Lot, from which a found ½ inch iron pipe tagged RCE 18560 on the West line of said lot bears North 00 degrees 47' 59" West 992.09 feet, thence along the West line of said lot North 00 degrees 47' 59" West 415.98 feet to the point of beginning, thence continuing along said West line, North 00 degrees 47' 59" West 96.04 feet, thence leaving said line North 46 degrees 53' 04" East 136.84 feet, thence South 07 degrees 53' 10" East 148.21 feet, thence South 62 degrees 57' 53" West 112.61 feet, thence North 65 degrees 35' 17" West 20.41 feet to the point of beginning.

c. 2006 Ford Five Hundred, VIN:1FAFP27136G157592

d. 2005 Ford Five Hundred, VIN: 1FAFP28145G170543

e. 2005 Ford Five Hundred, VIN: 1FAFP231X5G115957

f. 2005 Ford Five Hundred, VIN: 1FAFP25115G138072

g. 1976 Cessna T310R Aircraft, SN: 310R0676, Tail Number: N87RJ

h. Assorted Silver coins valued at $11,165.00 U.S. Currency seized: 09/11/12

i. $3,404.00 U.S. Currency seized: 09/11/12

j. Assorted Money orders valued at $4,487.36 U.S. Currency seized: 09/11/12

k. 2009 Chrysler modified with Coachmen Prism RV, bearing VIN: WDPPF445189365040

12

8.  If any of the property described above, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to seek forfeiture of any other property of the defendants up to the value of the property described in the aforementioned paragraphs above, or elsewhere, as being subject to forfeiture.

A TRUE BILL.

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
JENNIFER A. WINFIELD, #53350MO
Assistant United States Attorney